IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NIDAL AL KURDY, LAMA ABU KHADOUR, and FARAH AL KURDY,  )<br>)<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>UNITED STATES CITIZENSHIP AND  )<br>IMMIGRATION SERVICES, et al.,  )<br>)<br>Defendants.  )<br>)  | 8:07CV225<br><br>MEMORANDUM AND ORDER |

This matter is before the court on the defendants' motion to dismiss, Filing No. 10, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The plaintiffs filed this action for declaratory relief in the nature of mandamus, 28 U.S.C. § 1361, and pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, to compel the defendants to take action on the pending applications for adjustment of status to lawful permanent residence. Filing No. 1. The plaintiffs argue the defendants have unlawfully withheld action on their applications. The plaintiffs contend that this court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question); 8 U.S.C. § 1101 *et seq.* (Immigration and Nationality Act "INA"); and 28 U.S.C. § 1361 (mandamus statute). The defendants argue this court is without jurisdiction to decide this case.

**Subject Matter Jurisdiction**

"Because jurisdiction is a threshold issue for the court, the district court has 'broader power to decide its own right to hear the case than it has when the merits of the case are reached.'" *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993), *citing Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). For the court to dismiss for lack of subject

matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the complaint must be successfully challenged either on its face or on the factual truthfulness of its averments. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993). In a facial challenge to jurisdiction, all of the factual allegations regarding jurisdiction would be presumed true and the motion could succeed only if the plaintiff had failed to allege an element necessary for subject matter jurisdiction. *Id.* In a factual attack on the jurisdictional allegations of the complaint, however, the court can consider competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Id.* Because the parties have submitted evidence in support of their respective positions, this case presents both a facial and a factual jurisdictional challenge. In such a challenge, this court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d at 730. "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims." *Id.* The plaintiff has the burden of proving that jurisdiction does in fact exist. *Id.*

**Background**

Plaintiff Dr. Nidal Al Kurdy is a native and citizen of Syria. He currently resides in Burlington, Iowa, where he works as a neurologist with Burlington Neurology and Sleep Clinic. He has been so employed since October 2001. He has applied for permanent resident status based on an approved immigrant visa petition filed by his employer. Plaintiff Lama Abu Khadour is also a native and citizen of Syria and resides with her husband, Dr. Al Kurdy, in Iowa. She stays at home and cares for the couple's two children, their son Ahmad, who was born in the United States in 1997, and their daughter Farah,

who was born in Syria in 1999. Ms. Abu Khadour is applying for permanent resident status as part of her husband's application. Additionally, Farah Al Kurdy is a citizen of Syria and a resident of Burlington, Iowa, with her parents. Ms. Al Kurdy is applying for permanent resident status as a derivative of her father's application.

Dr. Al Kurdy entered the United States in September of 2001 on an H-1B non-immigrant visa for specialty workers. This classification is granted to a non-citizen who performs special occupations with baccalaureate or higher degrees. He has worked for his H1-B petitioner, Burlington Neurology, continuously since October of 2001.

In February of 2002, Burlington Neurology filed a labor certification with the Department of Labor on behalf of Dr. Al Kurdy. Such an application must be filed for Dr. Al Kurdy to attain permanent residence based on his employment. The Department of Labor certified Dr. Al Kurdy's application on October 11, 2002. Burlington Neurology then filed a petition for alien worker with the USCIS Nebraska Service Center on December 12, 2002. On February 19, 2003, this petition was approved. Dr. Al Kurdy also filed his application for adjustment to permanent resident status concurrently with his employer's petition on December 10, 2002. Ms. Abu Khadour and Ms. Al Kurdy filed their requests for permanent resident status with USCIS Nebraska Service Center on December 10, 2002.

Dr. Al Kurdy and Ms. Abu Khadour have been fingerprinted in connection with his I-485 application four times, on February 3, 2003, June 21, 2004, November 7, 2005, and most recently on February 26, 2007. Farah Al Kurdy has been fingerprinted once, on May 18, 2005.

On August 8, 2005, Dr. Al Kurdy inquired with the USCIS regarding the status of his I-485 application, and the applications of his wife and daughter. In a letter dated August 11, 2005, USCIS responded that the processing of their case was delayed as it was awaiting the results of required security checks on this case. The plaintiffs were instructed to call a customer service number if they did not receive a decision or other notice of action from the USCIS within six months.

On or about April 26, 2007, the plaintiffs' counsel sent a written inquiry to the Nebraska Service Center regarding the plaintiffs' pending applications. The Nebraska Service Center has not responded to this inquiry.

**Discussion**

The plaintiffs are incurring extra expenses each year as they are required to reapply for their current status. The delay has caused the plaintiffs to forgo employment, including a delay in the issuance of employment authorization that resulted in a forced unpaid leave of absence for Dr. Al Kurdy. Further, the delay prevented Ms. Abu Khadour's ability to attend her grandfather's funeral in Syria. The plaintiffs argue that they have a right to obtain mandamus relief pursuant to 28 U.S.C. § 1361 to require the defendants to perform their statutory duty to process their claims. *See* 8 C.F.R. § 245.2(a)(5). The plaintiffs also allege that the defendants' failure to process their applications violates the Administrative Procedures Act (APA), as the actions are arbitrary and capricious. The plaintiffs also request attorney's fees and costs under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412.

The defendants argue there is no jurisdiction to consider the plaintiffs' claims pursuant to 8 U.S.C. § 1252(a)(2)(B), as Congress has excepted discretionary decisions

regarding any changes of status of aliens from any judicial review. The government contends that because there is no clear duty to adjudicate the applications, the complaint fails to state a claim under the mandamus statute. 28 U.S.C. § 1361. In addition, the government argues there is no claim under the Administrative Procedures Act.

According to the defendants, the FBI does namechecks on all applications for status changes. Thirty-two percent of the namechecks require additional review by the FBI. Ultimately ten percent are named as possible subjects of an FBI record. These records must be retrieved and reviewed. Some information is electronic, while other information is in paper records. About one percent of these ten percent have derogatory information in their files. The FBI is unable to state specific time periods for finalizing these checks.

> Section 1255(a) states:
>
> Status as a person admitted for permanent residence on application and eligibility for immigrant visa. The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a). The government argues that these decisions are inherently discretionary and the statute sets no time-limits for making a determination whether to adjust the status of an alien. Accordingly, the government argues that Congress has divested courts of jurisdiction to consider mandamus actions to adjust the status of aliens. Further argues the government, Congress has stated:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in

> subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review–
>
> . . . .
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B). *See Ting Hao Yang and Yu Chen Huang v. Gonzales*, No. 4:06CV3290 (D. Neb. June 25, 2007) (Judge Richard Kopf finding that § 1252(a)(2)(ii) divests the court of subject matter jurisdiction as the time it takes to make a decision is completely discretionary); *Suresh Narra and Anurada Narra v. Gonzales*, 2007 WL 1959255 (D. Neb. July 3, 2007) (same). *See, e.g., INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) ("judicial deference to the executive branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'") (*quoting INS v. Abudu*, 485 U.S. 94, 110 (1988)); *Haig v. Agee*, 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention.").

The government likewise argues that the same analysis applies to the plaintiffs' argument regarding application of the APA. Because there is no statutory deadline for action, the government contends the plaintiffs cannot proceed against an agency. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). In this case, the agency is still waiting for FBI action and cannot make a decision until such action occurs.

The plaintiffs are seeking an order asking this court to require the defendants to make a final decision on their applications for adjustment of their status.[1]  It appears that nearly five years have elapsed since the FBI received the plaintiffs' applications for review.  A number of courts have concluded that § 1252(a)(2)(B) only strips the court of jurisdiction to actually review discretionary authority that is particularly specified in the statute.  *See Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 689-90 (9th Cir. 2003); *Khan v. Attorney General*, 448 F.3d 226, 231-33 (3rd Cir. 2006); *Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005).  There is no discretion, argue the plaintiffs, for the Attorney General to fail to process the applications.  The statutes require the Attorney General to administer and enforce the immigration and naturalization statutes, including adjudication of applications for adjustment status.  8 U.S.C. § 1103; 8 U.S.C. § 1255.  Further, 8 C.F.R. § 245.2(5)(i) requires that "the applicant shall be notified of the decision of the director and, if the application is denied, the reasons for the denial."  "The language of the statute and these regulations is mandatory not discretionary. Thus, regardless of the ultimate decision, INS has a non-discretionary, mandatory duty to act on Plaintiff's applications."  *Ansari v. U.S. Citizenship and Immigration Services*, 2007 WL 4553920 (D. Neb. 2007); *Yu v. Brown*, 36 F. Supp.2d 922, 931 (D.N.M. 1999); *see also Qijaun Li v. Chertoff*, 2007 WL 2123740 (D. Neb. 2007) (Where Judge Lyle Strom finds jurisdiction exists to order completion of adjudication of I-485 application); *Tang v. Chertoff*, 493 F. Supp.2d 148 (D. Mass. 2007) (granting of status not required, but adjudication of the application is legally required); *Li Duan V. Zamberry*, 2007 U.S. Dist. LEXIS 12697, at *9 (W.D. Pa. 2007)

---

[1] Unlike immigration naturalization laws, 8 U.S.C. § 1447(b), which requires adjudication within 120 days after examination, this particular statute and the accompanying regulations provide no time frame for which the applications must be adjudicated.

(judicial review permitted over inaction of status application, otherwise "such a result would amount to a grant of permission for inaction, and a purposeful disregard of the potential for abuse thereof, on immigration matters."); *Loo v. Ridge,* 2007 WL 813000, *3 (E.D. N.Y. 2007) (same); *Yu v. Chertoff*, 2007 WL 1742850, at *2-3 (N.D. Cal. June 2007) (8 C.F.R. § 245.2(a)(5) implies USCIS has a duty to process I-485 applications to decision); *Sing v. Still*, 470 F. Supp.2d 1064, 1067 (N.D. Cal. 2007) (mandatory duty to act on plaintiff's pending I-485 application); *Huang v. Gonzales*, 2007 U.S. Dist. LEXIS 32276, at *6 (D. Wash. 2007) (finding jurisdiction exists over delayed status of applications); *Soneji v. Dept. of Homeland Sec.*, 2007 WL 3101660 (N.D. Cal. Oct. 22, 2007) (same); *Sawad v. Frazier*, 2007 WL 2973833, *4 (D. Minn. Oct. 9, 2007) (same).[2]  The court has carefully reviewed the cases cited by the plaintiffs and the defendants.  The court finds the analysis concluding jurisdiction exists on the basis that the Attorney General must adjudicate these I-485 applications persuasive.  There is a mandatory duty to process these applications.  The discretion argued by the government occurs after a decision has been made, not whether the agency can choose not to make a decision or can choose to unreasonably delay a decision.  The statute requires a decision and this court has jurisdiction to review that inaction.  Accordingly, the court finds it has jurisdiction over this case.

A district court may issue mandamus relief if: (1) the plaintiffs have a clear and indisputable right to the relief requested; (2) the defendant has a nondiscretionary duty to honor that right; and (3) they have no other remedy.  *Castillo v. Ridge*, 445 F.3d 1057,

---

[2]There have also been district courts that have concluded no jurisdiction exists as this is a discretionary function.  *See Serrano v. Quarantillo*, 2007 WL 1101434, at *3 (D. N.J. 2007); *Bugulu v. Gonzalez*, 490 F. Supp.2d 965 (W.D. Wis. 2007); and *Tan v. Chertoff*, 2007 WL 1880742, at *4 (E.D. Mo. 2007); *see also Shah v. Hansen*, 2007 WL 3232353 (N.D. Ohio 2007 (finding jurisdiction under the APA but not under the mandamus statute).

1060-61 (8th Cir. 2006). First, the court finds the plaintiffs filed their I-485 applications nearly five years ago. As the court has herein concluded, the defendants have a nondiscretionary duty to timely process these applications, and such applications have not been fully processed. Second, there is no other adequate remedy to address the claims of the plaintiffs. As set forth herein, a number of district courts have determined that mandamus actions and complaints under the APA are acceptable methods for challenging whether a reasonable delay is acceptable under the circumstances of a particular case.[3] Further, there is no evidence that plaintiffs' namecheck should take almost five years to process, no evidence that this is a problem case, and no evidence that there is any investigation of the plaintiffs. Accordingly, the court finds it has jurisdiction both under the mandamus statute and under the APA.

THEREFORE, IT IS ORDERED:

1. Defendants' motion to dismiss, Filing No. 10, is denied.

2. Defendants shall provide to the court and plaintiffs within sixty days evidence specific to plaintiffs' applications showing that the delay in processing their namechecks and adjudicating their applications is reasonable.

---

[3] In *Tang*, a Massachusetts district court was faced with a similar situation where the plaintiffs' applications for adjustment of status were delayed due to a pending security check. 493 F. Supp.2d at 148. Under the particular facts and circumstances presented, the court held the government's four-year delay on the employment-based application due to a pending security check was unreasonable. *Id.* at. 150. *See also Galvez v. Howerton*, 503 F. Supp. 35, 39 (C.D. Cal. 1980) (holding a six-month delay unreasonable); *Paunescu v. INS*, 76 F. Supp. 2d 896, 901-02 (N.D. Ill. 1999) (holding a ten-month delay unreasonable); *Yu*, 36 F. Supp. 2d at 932 (holding a two-and-one-half-year delay unreasonable); *Agbemaple v. INS, 1998 WL 292441* (holding a twenty-month delay unreasonable); *Hu v. Reno*, 2000 WL 425174, * 4 (N.D. Texas 2000) (holding a two-and-one-half-year delay unreasonable); *Salehian v. Novak*, 2006 WL 3041109 (D. Conn. 2006) (holding a two-year delay unreasonable).

3.  Defendants shall, within fifteen days after providing the court and plaintiffs with the evidence described in the preceding paragraph, move for summary judgment on the reasonableness issue, and the parties shall submit briefs in support of and in opposition to the motion for summary judgment.

DATED this 10th day of January, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge